IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ING BANK, FSB., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 09-CV-897-SLR |
| ) | |
| ) | |
| AMERICAN REPORTING ) | |
| COMPANY, LLC ) | |
| ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM ORDER**

At Wilmington this 8th day of May, 2012, in consideration of the parties' outstanding pretrial motions;

IT IS ORDERED, for the reasons discussed below, that:

1. **Background**: The parties were set to go to trial on March 12, 2012. (D.I. 34) In anticipation of their trial date, the court held a pretrial conference on February 29, 2012. (D.I. 127) Prior to this conference, the parties filed numerous pretrial motions. These included: 1) defendant's motion to exclude the expert testimony of Gary Walker (D.I. 72); 2) plaintiff's cross-motion to exclude the expert testimony of William King (D.I. 76); 3) defendant's motion to preclude plaintiff from recovering in excess of $750.00 (D.I. 89); 4) defendant's motion to preclude reference to the April 24, 2009 email from Francis Madath to Dana Palmer (D.I. 99); 5) plaintiff's motion to exclude issues relating to ING's origination of the Long loan (D.I. 100); 6) defendant's motion to amend or

correct its answer to include the affirmative defense of release (D.I. 113); and 7) plaintiff's motion for leave to file an amended complaint (D.I. 114).

2. At the pretrial conference, the court definitively addressed D.I. 99, explaining that the motion was granted. (D.I. 127 at 6)

3. In order to address D.I. 72, 76, 89 and 100, the court made the following observation about plaintiff's theory of damages:

> Plaintiff has asked the Court to decide whether its allegedly negligent origination of the Long loan is relevant at trial; defendant claims it is while plaintiff claims it is not. In order to resolve this motion, both sides directed the court to the Restatement (Second) of Tort[s] section 465 . . . which provides in pertinent part: "The plaintiff's negligence is a legally contributing cause of his harm if, but only if, it is a substantial factor in bringing about his harm, and there is no rule restricting his responsibility for it.
>
> Accordingly, in my mind, the first step of the analysis that I [should take] in connection with all of these motions, because they are all interrelated, I think, is to determine what harm the plaintiff is asserting.
>
> [T]o the extent that plaintiff is requesting in damages the value of the defaulted mortgage, then the origination of the loan is relevant.
>
> . . .
>
> I believe plaintiff's theory is in error, however. I believe the only [injury] that can be properly asserted against defendant is based on the fact that ING, relying on ARC's appraisal, issued a mortgage that was not fully secured by the value of the property. Consistent with this view, the value of the damages in this case would be limited to the value of the unsecured portion of the mortgage, not the value of the entire defaulted mortgage.

(*Id.* at 4-5) The court then indicated that it was up to plaintiff to decide whether it was willing to move forward on the court's theory of damages. (*Id.* at 7) Assuming plaintiff was, then issues regarding origination would be irrelevant and motions D.I. 76, 89 and

2

100 would be moot;[1] however, a retroactive appraisal would be relevant and, therefore, in connection with D.I. 72, defendant would be given time to find an expert to do a reappraisal.[2] (*Id.* at 6)

4. At the pretrial conference, the court also addressed the parties' motions to amend (D.I. 113 and 114), both filed on the eve of the pretrial conference, but no rulings were made at the time.

5. On March 5, 2012, the court held a telephone conference with the parties to address outstanding issues; in particular, the court and defendant needed to know which theory of damages plaintiff would be pursuing at trial. (D.I. 128 at 3) Following the telephone conference, in an effort to address outstanding issues, the court issued a March 8, 2012 order. In that order, the court requested: 1) "simultaneous submissions regarding the proper interpretation of damages" in which both parties were to use exact figures and cite to relevant case law in support of their positions; and 2) a proffer from plaintiff on "whether the issue of direct negligence was vetted during discovery and incorporated into its complaint." (D.I. 118) Given that plaintiff had agreed to move forward with the court's interpretation of damages, the court also ordered defendant to find and produce an expert report regarding valuation. (*Id.*)

6. To date, the following issues remain: a ruling on the parties' motions to

---

[1] D.I. 76 and 100 were plaintiff's attempts to exclude issues relating to origination of the loan; D.I. 89 was defendant's attempt to limit damages to $750 which the court indicated at oral argument that it did not see as the proper theory of recovery.

[2] In D.I. 72, defendant sought to exclude the expert testimony of Gary Walker in that he was not timely identified as an expert witness and defendant had not obtained a rebuttal expert report.

amend (D.I. 113 and 114) and the court's interpretation of damages.[3]

7. **Motions to amend.** Pursuant to Fed. R. Civ. P. 15(a), a party may amend its pleading once as a matter of course within twenty-one days after serving it or, if the pleading is one to which a responsive pleading is required, twenty-one days after service of a responsive pleading or twenty-one days after service of a Rule 12(b), whichever is earlier. Fed. R. Civ. P. 15(a). Otherwise, a party may amend its pleading only with the opposing party's written consent or the court's leave. *Id.*

8. The court should freely grant leave to amend "when justice so requires." *Id.* The Third Circuit has adopted a liberal approach to the amendment of pleadings to ensure that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.,* 921 F.2d 484, 486-87 (3d Cir. 1990) (citations omitted). Amendment, however, is not automatic. *See Dover Steel Co., Inc. v. Hartford Accident and Indem.,* 151 F.R.D. 570, 574 (E.D. Pa. 1993). The court may exercise its discretion to deny leave to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." *Foman v. Davis,* 371 U.S. 178, 182 (1962); *see also Oran v. Stafford,* 226 F.3d 275, 291 (3d Cir. 2000). "Delay becomes 'undue,' and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to

---

[3] As discussed above, D.I. 99 was definitively resolved at the pretrial conference. By agreeing to move forward on the court's theory of damages, D.I. 76, 89 and 100 were mooted, and D.I. 72 was resolved to the extent that the court permitted defendant to find a rebuttal expert on valuation.

4

amend." *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008) (citing, inter alia, *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001)). Therefore, when considering undue delay, the court focuses on the movant's reasons for not amending sooner. *Id.* Undue prejudice exists when an unfair burden has been placed on the opposing party. *Cureton*, 252 F.3d at 273 (citation omitted). With respect to prejudice, the court focuses on the hardship to the defendant if the amendment were permitted, and in particular will consider "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Id.* (citations omitted). Futility of amendment occurs when the complaint or defense, as amended, does not state a claim upon which relief can be granted. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). If the proposed amendment "is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990).

9. Plaintiff, in its memorandum in support of its motion to amend, explained that the proposed amendments "are necessary to . . . remove the allegations and counts that relate solely to Palmer and [to] . . . clarify and more specifically state the remaining allegations against ARC." (D.I. 115 at 4) The court finds that the original complaint sounded in vicarious liability and plaintiff's proposed amendment does much more than "clarify" the remaining allegations. The amendment, filed on the eve of the pretrial conference and just weeks before the trial, was designed to add claims of direct negligence, claims not originally pled or argued. For this reason, the court denies

plaintiff's motion to amend. Had plaintiff sought to move forward on a theory of direct liability it could have, and should have, sought leave to amend well before it did. To allow plaintiff to alter its theory of the case at this point in time would unduly prejudice the defendant by forcing it to prepare to defend against a new theory of the case after discovery has been completed.

10. With respect to defendant's motion to amend, it claims that its motion is case dispositive in the sense that the release signed between Palmer and ING extinguishes the liability of ARC. (D.I. 113 at ¶ 12, 15; D.I. 127 at 13) The court finds otherwise. Under Delaware's Uniform Contribution Among Joint Tortfeasors Law:[4]

> A release by the injured person of 1 joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasor unless the release so provides; but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.

10 Del. C. § 6304(a). Joint-tortfeasors are defined as "2 or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." 10 Del. C. § 6301. Because Palmer and ARC fit within this definition and the Palmer-ING release does not provide for

---

[4] While the Palmer-ING settlement agreement is "governed by the laws of the State of Washington" (D.I. 113, Ex. D, section 6), the controversy at bar, between ING and ARC, does not arise from that agreement. The parties to the case at bar have specifically agreed that their contract, and consequently disputes arising from it, will "be governed by the laws of the State of Delaware." (D.I. 1 at Ex. A, section 10.3) Therefore, even though the release at issue is to be interpreted under Washington law, the current controversy has been, and will continue to be, adjudicated under the laws of Delaware in accordance with the intention of the parties.

ARC's release from liability,[5] the court finds that defendant's motion to amend is futile.[6] Even if defendant's amendment were permitted, the Palmer-ING release could not extinguish ARC's liability under Delaware law. However, the parties agree that, under Delaware law, any recovery by ING against ARC may be reduced by the amount recovered by ING from Palmer.

11. **Damages.** At issue in this case are negligence claims and a breach of contract claim, all based on the allegedly faulty appraisal. Whether damages flow from a breach of duty or from a breach of contract, damages are not cognizable unless they flow from an injury that has been proximately caused by the defendant. See, e.g., Duphily v. Delaware Elec. Co-op, Inc., 662 A.2d 821, 829 (Del. 1995); Atwell v. RHIS, Inc., 2006 WL 2686531, at *1 (Del. Super. July 28, 2006).

12. There can be no dispute that an inflated appraisal (ARC's alleged conduct) would have been a significant factor in ING's decision to issue the $1,610,000 mortgage. Just as evident, however, is the fact that ING did not issue the mortgage on

---

[5] In fact, the release explicitly provides the opposite, stating: "ING Bank does not hereby release ARC from any claim aris[ing] out of or related to the Delaware Action." (D.I. 113 at Ex. D, section 1)

[6] In Blackshear v. Clark, 391 A.2d 747 (Del. 1978), the Supreme Court of Delaware applied § 6304(a) to allow a plaintiff to proceed against her doctor for medical malpractice after she had settled with the doctor's principal (i.e., the hospital). The court, however, "express[ed] no view about a case in which the servant is released but not a master." Id. at 748. While the Court of Chancery, in First State Staffing Plus, Inc. v. Montgomery Mut. Ins. Co., No. Civ.A. 2100-S, 2005 WL 2173993, at *10 (Del. Ch. Sept. 6, 2005), suggested that an exception may apply in that factual scenario, this court declines to read one in in light of the plain language of the statute. Moreover, as plaintiff notes in its brief, numerous jurisdictions have concluded that, under Uniform Contribution Among Tortfeasors Act, settlement with an agent will not prohibit subsequent recovery from a principal. (D.I. 121 at ¶ 3)

just that one criterion; ING itself evaluated the credit-worthiness of the mortgagee and applied its internal loan policies and other regulations to the data it gathered in deciding whether, and in what amount, to issue the mortgage. Consequently, in order to determine whether the appraisal was the proximate cause of ING's alleged injury (as opposed to just one of the proximate causes), the origination process would have to be explored.

13. Faced with the prospects of having that evidence presented to the jury, ING agreed to a different measure of damages. ARC also moved from its original damages position ($750, the appraisal fee) in order to present its own revised appraisal. Because the parties still disagree about how the damages case should be presented to the jury,[7] the court attempts to do so, recognizing that neither parties' theory of damages is a perfect measure of the injury ING allegedly sustained and recognizing further that a damages award should represent "adequate" compensation determined with as much certainty as the circumstances permit. See Restatement (Second) of Torts, § 912.

14. The court continues to hold that the damages award in this case should not be divorced from the amount of the loan - the money that ING put at risk - and how much of that loan ING can recoup through the value of the property. The court

---

[7] ING contends that the amount of its damages should be the difference between ARC's appraisal of the property at issue ($2,300,000) and ING's expert's appraisal of the property ($740,000), for a total of $1,560,000. ARC suggests that the amount of damages should reflect the fact that there was insufficient collateral for the loan amount; i.e., the calculation would be $1,610,000 minus the revised appraisal amount (as the jury determines that to be).

8

acknowledges that the use of the loan amount implicates ING's loan policies[8] and the conduct of both parties. Nevertheless, in the interests of clarity and justice, the court concludes that the loan amount (without evidence as to whether that amount was reasonable in the first instance) and the revised appraisal amount (as the jury determines that to be) best reflect ING's injury under the facts at bar and represents adequate compensation determined with as much certainty as circumstances permit.

United States District Judge

---

[8] The court, frankly, sees no problem with the scenario ING poses in this regard, to wit, that if actual losses were the bases of damages in cases like this, the same property appraised the same negligent way would result in different damages awards depending on who the bank was, with some banks (making riskier loans) recouping more damages than other banks (making more conservative loans). The purpose of damages is to compensate for individual losses, not to quantify negligent conduct.